IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EARL A. GARRISON, ET AL,

    Plaintiffs,

    v.

PALMAS DEL MAR HOMEOWNERS
ASSOCIATION, INC., ET AL,

    Defendants

CIVIL NO.: 06-2062 (GAG/MEL)

**OPINION AND ORDER**

**I.**    **PROCEDURAL BACKGROUND**

On October 20 and 27, 2006, respectively, plaintiffs Earl A. Garrison, his wife Antonia J. Garrison and the conjugal legal partnership constituted by them filed a complaint and an amended complaint in this case against: (1) Palmas del Mar Homeowners Association, Inc., ("PDMHA"); (2) Palmas del Mar Architectural Review Board, Inc., ("PDMARB"); (3) Wilfredo López ("López"), PDMARB's Executive Director, his wife and the conjugal legal partnership constituted by them; and (4) David E. Melnyk, his wife Marlo Melnyk and the conjugal legal partnership constituted by them (collectively, "the Melnyks"), for declaratory judgment and injunction, breach of contract, negligence, bad faith and damages. Docket Nos. 1, 3.

Plaintiffs and the Melnyks are next door neighbors in the Palmas del Mar complex in Humacao, Puerto Rico. Their properties are separated by a party wall that is co-owned by plaintiffs and the Melnyks. As property owners in the Palmas del Mar complex, they are bound by the provisions contained in Deed No. 2 of August 27, 1997, authorized by Notary Public Rafael Cuevas

1

<u>Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,</u>
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

Kuinlan, titled "Deed of Amended and Restated Declaration of Rights, Restrictions, conditions and Constitution of Restrictive Covenants and Establishment of Provisions for Palmas del Mar Homeowners Association Incorporated" ("Deed No. 2") and by Deed No. 130 of April 19, 1974, authorized by Notary Public Guillermo A. Nigaglioni, titled "Deed of Declaration of Rights, Restriction Covenants and Constitution of Restrictive Covenants for Single Family Residential Areas and Other Special Restrictions" ("Deed No. 130"). In general terms, the complaint claims that defendants have objected to or impeded construction work that plaintiffs want to perform within their property. Plaintiffs claim that said work is essential in order to rectify the safety hazards imposed by the deteriorated conditions of their property and that defendants' bad faith and negligent failure to allow them to make the improvements constitute a breach of the contractual duties imposed by Deed No. 2, and have resulted in damages to plaintiffs and their property. Docket No. 1, ¶¶ 43, 46, 49 and 53. On December 26, 2006, PDMHA answered the amended complaint. Docket No. 8. PDMARB and López answered the amended complaint on January 4, 2007. Docket 9.

On May 11, 2007, PDMARB and López filed a Motion to Dismiss and/or Compel Arbitration. Docket No. 22. In said motion, PDMARB and López moved the court to dismiss the amended complaint and compel the parties to arbitrate their claims under certain dispute resolution clauses contained in Deed No. 2 and Deed No. 130. The dispute resolution clause in Deed No. 2 provides that:

> The Association, Developer, Owners, all Persons subject to the Declaration, and any person not otherwise subject to this Declaration who agrees to submit to this Article (collectively, "Bound Parties") agree to encourage the amicable resolution of disputes involving the Properties and to avoid the emotional and financial costs of

2

<u>Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,</u>
Civil No. 06-2062 (GAG/MEL)
Opinion and Order
_____

> litigation if at all possible. Accordingly, each Bound Party Covenants and agrees that it shall attempt to resolve all claims, grievances or disputes, between such Bound Party involving the Properties, including, without limitation, claims, grievances or disputes arising out of, or relating to, the interpretation, application or enforcement of this Declaration, Bylaws, the Association rules, or the Certificate of Incorporation (collectively, "Claim") through alternative dispute resolution methods, such as mediation and arbitration.
>
> Bound Parties may pursue any lawful means, including alternative dispute resolution methods, to resolve (a) any suit by the Association against any Bound Party to enforce the provisions of Article V; or (b) any suit by the Association to obtain a temporary restraining order (or equivalent emergency equitable relief) and such other ancillary relief as the court may deem necessary in order to maintain the status quo and preserve the Association's ability to enforce the provisions of Article VII and Article IX; or (c) any suit between Owners (other than the Developer) seeking redress on the basis of a Claim which would constitute a cause of action under the laws of the Commonwealth of Puerto Rico in the absence of a claim based on the Declaration, Bylaws, Articles or rules of the Association, if the amount in controversy exceeds $5,000. Any Bound Party may submit such Claims to alternative dispute resolution methods, but there shall be no obligation to do so.
>
> To foster the amicable resolution of disputes, the Board may adopt alternative dispute resolution procedures applicable to all Bound Parties.

Docket No. 22, Exhibit 1 (Deed No. 2, Part XIII (General Provisions), § K); <u>see also</u> Docket No. 32, Exhibit 1.[1]

---

[1] For purposes of Deed No. 2, the term "Association" refers to PDMHA. <u>See</u> Docket No. 2, Exhibit 1 (Deed No. 2, Part I (Amendment by Restatement), § I, ¶ C). The term "Developer" refers to Palmas del Mar Company, its successors and its assignees to which all or any portion of the rights of the Developer hereunder are assigned by written instruments recorded in the Registry of Property of Puerto Rico, Humacao Section. <u>Id.</u>, ¶ J. "Declaration" refers to the Declaration of Rights, Restrictions, Covenants and Constitution of Restrictive Covenants and Establishment of Provisions for the Palmas del Mar Homeowners Association, Inc. <u>Id.</u>, ¶ K. The term "Owner" refers to "the Owner as shown by the records in the Registry of the Property of Puerto Rico, Humacao Section whether it be one or more persons, firms, associations, corporations, or other legal entities, of fee simple title to any Residential Lot, Family Dwelling Unit, Community Facilities Lot, Commercial Lot, Community Facilities, Commercial Unit or Rural Tract situated upon the Properties but, notwithstanding any applicable theory of a mortgage shall not mean or refer to the mortgagee, its successors and assigns, unless and until such mortgagee has acquired title pursuant to foreclosure or a proceeding of deed in lieu of foreclosure." <u>Id.</u>, ¶ S. It does not refer, however, to "any lessee or tenant of an Owner." <u>Id.</u>

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

The dispute resolution clause in Deed No. 130 provides that: "In the event of any disputes concerning a party wall, or under the provisions of this Part, each party shall choose one arbitrator, and such arbitrators shall choose one additional arbitrator, and the decision of the majority of all the arbitrators shall be final and conclusive of the question involved."  Docket No. 42, Exhibit 1.

Plaintiffs opposed the Motion to Dismiss and/or Compel Arbitration on June 25, 2007, alleging that even though they are encouraged by said clauses to seek an amicable resolution of disputes through mediation or arbitration, they are by no means obligated to mediate or arbitrate and "may pursue any lawful means to resolve their claim against [d]efendants."  Docket No. 32, at 4.

On July 13, 2007, the Melnyks filed a "Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim on Which Relief can be Granted", and a Memorandum of Law in support thereof.  Docket Nos. 35 and 36, respectively.[2]  In said motion and memorandum of law, the Melnyks contend that plaintiffs do not state a valid claim under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141, are foreclosed from asserting any claim against defendants "due to the fact that the [p]laintiffs have a contractual obligation to bear a dispute resolution mechanism prior to initiate any proceeding before [the court]", and are not entitled to any compensatory damages, attorneys fees or any other relief.  Docket No. 35, at 2.  On July 19, 2007, PDMARB and López replied to plaintiffs' opposition to the request for dismissal and/or to compel arbitration filed by PDMARB and López.  Docket No. 37.

---

[2] The Melnyks have not submitted themselves to the jurisdiction of the court and have not answered the amended complaint yet.  They were served with summons by publication sometime between May 18 and June 20, 2007.  See Docket Nos. 24 and 30.

<u>Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,</u>
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

On July 23, 2007, the court entered an order denying the requests for dismissal filed by PDMARB, López and the Melnyks. The court, however, referred the requests to compel arbitration to the undersigned for disposition pursuant to <u>González v. GE Group Administrators, Inc.</u>, 321 F.Supp.2d 165, 166-67 (D. Mass. 2004) and <u>Herko v. Metropolitan Life Ins. Co.</u>, 978 F. Supp. 141 n.1 (W.D.N.Y. 1997). Docket Nos. 38 and 39.

On August 6, 2007, plaintiffs opposed the request to compel arbitration contained in the Melnyks' "Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim on Which Relief can be Granted." Docket No. 41. The Melnyks replied on August 13, 2007. Docket No. 45.

II. LEGAL ANALYSIS

A. The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA").

PDMARB and López seek to compel arbitration relying only on state law, namely, the Puerto Rico Commercial Arbitration Act, P.R. Laws Ann., tit. 32, §§ 3201-3229 ("PRCAA"). <u>See</u> Docket No. 22, at 6-7. The Melnyks support their request to compel arbitration by briefly citing two cases decided by the U.S. Supreme Court which interpret the FAA, namely, <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213 (1985) and <u>Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.</u>, 460 U.S. 1 (1983). <u>See</u> Docket No. 36, at 12-13. Plaintiffs, on the other hand, rely solely on the language of the dispute resolution clause contained in Deed No. 2 in opposing the requests to compel arbitration.

Congress enacted the FAA in order "[t]o overcome judicial resistence to arbitration." <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440, 443 (2006); <u>see also</u> <u>Volt Information</u>

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

Sciences, Inc. v. Board of Trustees, 489 U.S. 468, 474 (1989) ("The [FAA] was designed 'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' (citation omitted), and to place such agreements 'upon the same footing as other contracts'", quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220 (1985) and Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974)). Thus, "[t]he FAA is intended to encourage speedy resolution of disputes and to bind parties to their voluntary agreements." Ideal Unlimited Services Corp. v. Swift-Eckrich, Inc., 727 F.Supp. 75, 76 (D.P.R. 1989). Therefore, the FAA allows "parties to an arbitrable dispute to move out of court and into arbitration as quickly and easily as possible." Southland Corp. v. Keating, 465 U.S. 1, 7 (1984); quoting Moses H. Cone Memorial Hospital, 460 U.S. at 22.[3]

Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. By enacting this section, "Congress declared a national policy favoring arbitration and took away from the States the power to require a judicial forum for the resolution of the claims that the contracting parties had agreed to resolve through arbitration." Southland Corp., 465 U.S. at 10.

---

[3] Under the FAA, "[w]hen deciding a motion to compel arbitration, a court must determine whether '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.' Bangor Hydro-Electric Co. v. New England Tel. & Tel. Co., 62 F.Supp.2d 152, 155 (D.Me. 1999). Only if all three prongs of the test are satisfied will a motion to compel arbitration be granted." Combined Energies v. CCI, Inc., ___ F.3d ___, 2008 WL 274064, at 2 (1st Cir. 2008).

<u>Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,</u>
Civil No. 06-2062 (GAG/MEL)
<u>Opinion and Order</u>

The language contained in Section 2 of the FAA reveals that the FAA applies only to arbitration agreements involving "maritime transactions" or "contracts evidencing a transaction involving commerce." 9 U.S.C. § 2. For purposes of the FAA, "commerce" refers to "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation.... 9 U.S.C. §. 1.

The term "involving commerce" is to be broadly construed as a result of the strong federal policy favoring arbitration. See <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 273-77 (1995); see also <u>Societe Generale de Surveillance, S.A. v. Raytheon European Management and Systems Co.</u>, 643 F.2d 863, 867 (1st Cir. 1981); <u>Medika Intern., Inc. v. Scanlan Intern., Inc.</u>, 830 F.Supp. 81, 84 (D.P.R. 1993). Thus, if the contract at issue involves "commerce" as defined by the FAA, then said statute will govern the dispute; however, if the contract does not involve "commerce" as defined by FAA, then the dispute will be governed by state law. See e.g, <u>H.L. Libby Corp. v. Skelly and Loy, Inc.</u>, 910 F.Supp. 195, 197 (M.D. Pa., 1995) ( "In the present case, if the contract at issue involves commerce, as that term is defined in the FAA, the FAA governs the dispute. 'If, however, the transaction does not implicate interstate commerce, the <u>Erie</u> rules governing diversity jurisdiction will apply,' and we apply the substantive law of Pennsylvania, ...") (internal citations omitted); <u>Cecala v. Moore</u>, 982 F.Supp. 609 (N.D. Ill. 1997) (applying Illinois' arbitration law instead of the FAA because contract for sale of real estate did not evidence a transaction involving

interstate commerce); Brown v. Hyatt Corp., 128 F.Supp.2d 697 (D.Hawaii, 2000) (applying Hawaii's arbitration law instead of the FAA because plaintiff was asserting a tort claim that involved neither a "maritime transaction" nor "a contract evidencing a transaction involving commerce" as defined by the FAA); see also Medina Betancourt et al. v. Cruz Azul de P.R., 155 D.P.R. 735, 742-43 (2001) (Since Congress promulgated the FAA under the Commerce Clause, it only applies when the parties allege and prove that the transaction at issue involved interstate commerce; in this case, neither the FAA nor its interpretative case law applied to petitioner's claims insofar she did not alleged nor proved that employment contract was covered by the FAA because it involved interstate commerce). Therefore, the court must determine whether Deed No. 2 and Deed No. 130, which contain the dispute resolution clauses, relate to or involve "transactions involving commerce" within the meaning of the FAA.

The FAA generally does not apply to residential real estate transactions that have no substantial or direct connection to interstate commerce, regardless of whether said transactions involve out-of-state purchasers. See e.g., Saneii v. Robards, 289 F.Supp.2d 855 (W.D.Ky., 2003); see also Cecala, 982 F.Supp. 609; SI V, LLC v. FMC Corp., 223 F.Supp.2d 1059 (N.D. Cal. 2002). In Saneii, the court stated that:

> Notwithstanding its congenial effects on interstate commerce, the sale of residential real estate is inherently intrastate. Contracts strictly for the sale of residential real estate focus entirely on a commodity-the land-which is firmly planted in one particular state. The citizenship of immediate parties (the buyer and the seller) or their movements to or from that state are incidental to the real estate transaction. Those movements are not part of the transaction itself. All of the legal relationships concerning the land are bound by state law principles. Single residential real estate transactions of this type have no substantial or direct connection to interstate

commerce. For all these reasons, logic suggests that such transactions are not among those considered as involving interstate commerce.

To characterize a residential real estate as involving interstate commerce under these circumstances would actually promote a lack of uniformity in the law, which is exactly contrary to one of the FAA's stated purpose. If the FAA applied to out-of-state purchasers of Kentucky real estate, different rules would apply in that considerable volume of transactions concerning property here. Applying Kentucky law to all Kentucky real estate transactions creates a more uniform and, therefore, a more equitable body of law.

[...]

On the other hand, more complex transactions related to land may involve interstate commerce. For instance, in Allied-Bruce, the United States Supreme Court found that a termite extermination contract between an Alabama homeowner and a local Terminix franchise did involve interstate commerce. 513 U.S. at 269, 115 S.Ct. 834. The Court came to this conclusion by applying the broad interpretation of § 2 of the FAA. Id. The Court's analysis was that Terminix was a commercial entity, the parties were from multi-states, and the termite-treating and house-repairing materials used by the defendants came from outside Alabama. Id. at 281, 115 S.Ct. 834. More importantly, the Court articulated and emphasized the purposes behind the FAA and why a broad interpretation of "a contract evidencing a transaction involving commerce" was necessary in order to be consistent with those purposes. Id. ....

Other courts have also held that contracts for the construction of various commercial buildings, and even the construction of sewers, involved interstate commerce for purposes of the FAA. See Monte v. Southern Delaware County Authority, 321 F.2d 870 (3rd Cir. 1963); Sears Roebuck and Co. v. Glenwal Co., 325 F.Supp. 86 (S.D.N.Y. 1970); Fite and Warmath Construction Co., Inc. v. MYS Corp., 559 S.W.2d 729 (Ky. 1977). Although these cases concerned facilities which are located in one state and remained in one state, ... the scope of these contracts was much broader because of the interstate, commercial aspect of the transactions. None of these cases involves a straightforward residential real estate transaction.

Bearing in mind the historical intrastate nature of residential property transactions, as well as the Supreme Court's analysis of purposes of the FAA, the Court concludes that a residential real estate sales contract does not evidence or involve interstate commerce. This is true despite the broad reach of "interstate commerce," as articulated by the United States Supreme Court in Allied-Bruce. 513

U.S. at 265, 115 S.Ct. 834....

Saneii, 289 F. Supp.2d at 858-60 (footnotes omitted). Similarly, the court in Cecala expressed that:

> In Mathews v. Fluor Corp., 312 S.C. 404, 440 S.E.2d 880, 881 (1994), the purchasers of real estate alleged that the sellers had fraudulently misrepresented the condition of the property. The sellers moved to stay the proceedings and compel arbitration pursuant to the FAA. The property at issue was in South Carolina, the seller was a California entity and the buyer was a Pennsylvania partnership. In addition, transactions incident to the sale took place in jurisdictions outside South Carolina. Nevertheless, the Supreme Court of South Carolina held that the contract "did not involve interstate commerce as defined in the Federal Arbitration Act," and that it was therefore outside the scope of the FAA. Id. at 881-82.

Cecala, 982 F.Supp. at 611-12.

As their titles suggest, Deed No. 2 and Deed No. 130 establish and regulate the rights, restrictions, conditions and constitution of restrictive covenants affecting the properties located in the Palmas del Mar complex and their owners. Deed No. 2 and Deed No. 130 focus essentially, if not entirely, on a commodity (that is, the land and properties of the Palmas del Mar complex), which is located in, and subjected to the laws of, Puerto Rico. Both deeds regulate real estate transactions in the sense that they impose terms and conditions applicable to purchasers of real estate properties at Palmas del Mar. Thus, these deeds are inherently intrastate and do not constitute "transactions involving commerce" within the meaning of the FAA. The fact that for jurisdictional purposes plaintiffs are citizens of New York while PDMHA and PDMARB are citizens of Puerto Rico is incidental to the real estate provisions and agreements executed through these deeds. See Saneii, 289 F.Supp.2d at 858; Cecala, 982 F.Supp. at 612.

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

Furthermore, even if the FAA were applicable to the case at bar, the court would still have to resort to Puerto Rico law to ultimately adjudicate whether the dispute resolution clauses are valid and enforceable. Under the FAA, "the validity and enforceability of arbitration agreements are still matters of state contract law." Colón De Sánchez v. Morgan Stanley Dean Witter, 376 F.Supp.2d 132, 136 n.3 (D.P.R. 2005); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (courts should generally apply state contract law principles when deciding whether parties agreed to arbitrate a certain matter); Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987) ("An agreement to arbitrate is valid, irrevocable, and enforceable, as a matter of federal law, ... 'save upon such grounds as exist at law or in equity for the revocation of any contract.' ... A state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 552 (1st Cir. 2005) ("[F]or the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists."); Sánchez-Santiago v. Guess, Inc., 512 F.Supp.2d 75, 78 (D.P.R. 2007) ("In analyzing the first requisite, whether a valid agreement to arbitrate exists, the Court looks mainly to state law on contracts."). The court will therefore adjudicate the present arbitration dispute pursuant to Puerto Rico law.

    **B.**    **The Puerto Rico Commercial Arbitration Act.**

The PRCAA "authorizes and regulates in a sweeping manner the commercial arbitration agreements and it provides the way in which said agreements shall be enforced by the courts." Autoridad Sobre Hogares v. Trib. Superior, 82 D.P.R. 344, 359 (1961). The PRCAA is

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

"substantially patterned on the arbitration legislation of California and on similar laws of other states, on the New York proceedings, and on the United States Arbitration Act." Id.

Article 1 of the PRCAA states that:

> Two (2) or more parties may agree in writing to submit to arbitration. . . any dispute which may be the object of an existing action between them at the time they agree to the arbitration; or they may include in a written agreement a provision for the settlement by arbitration of any dispute which may in future arise between them from such settlement or in connection therewith. Such an agreement shall be valid, requirable and irrevocable except for the grounds prescribed by law for the reversal of an agreement.

P.R. Laws Ann., tit. 32, § 3201.[4] The Supreme Court of Puerto Rico has reiterated in many occasions that the PRCAA embodies a vigorous policy favoring arbitration and that all doubts about the existence of arbitration must be resolved in favor of that proceeding. Medina Betancourt et al. v. Cruz Azul de P.R., 155 D.P.R. 735, 738 (2001); Paine Webber Inc. v. Soc. de Gananciales, 151 D.P.R. 307, 312 (2000); Universidad Católica de Puerto Rico v. Triangle Engineering Corp., 136 D.P.R. 133, 142-43 (1994); McGregor-Doniger v. Tribunal Superior, 98 D.P.R. 864, 869 (1970); see also Sears Roebuck & Co. v. Herbert H. Johnson Assoc., Inc., 325 F.Supp 1338, 1340 (D.P.R. 1971). Although the courts are not barred from intervening in an arbitration agreement, judicial abstention is highly recommended. Universidad Católica de Puerto Rico v. Triangle Engineering Corp., 136

---

[4] Under the PRCAA, "[a]ny of the parties to a written arbitration agreement who claims negligence or refusal on the part of another party to resort to arbitration according to the agreement, may move the court for an order compelling the parties to resort to arbitration in conformity with the agreement between them.... If, after hearing both parties, the court finds that no substantial dispute exists as regards the existence or validity of the arbitration agreement, or the nonperformance thereof, said court shall issue an order commanding the parties to resort to arbitration in conformity with the terms of the agreement." P.R. Laws Ann. tit. 32, § 3204.

D.P.R. 133, 142 (1994).[5]

"Arbitration may arise from a clause accessory to a principal contract through which the parties agree to submit their future disagreements to arbitration, or may arise from a written agreement to settle an existing controversy. [The PRCAA] covers both situations." Rivera v. Samaritano & Co. Inc., 108 D.P.R. 604, 608 (1979). "Where the parties so provide in the arbitration agreement, arbitrators must follow rules of law and make their awards in accordance with the prevailing legal doctrines. If the arbitration agreement is silent with regard thereto, the arbitrators may declare law as they please, and no award will be vitiated because of their legal errors." Rivera, 108 D.P.R. at 609 (citing Autoridad Sobre Hogares de P.R., 82 D.P.R. at 353 (1961). That is, "in the absence of a provision in the arbitration agreement or of a statutory requirement to that effect, the arbitrator is free to ignore substantive rules of law." Rivera, 108 D.P.R. at 609.

Notwithstanding the policy favoring arbitration embodied by the PRCAA, the arbitration mechanism is to be employed only if agreed by the parties and in the manner agreed upon. Thus, "a dispute's arbitrability, that is, the finding of whether an agreement binds the parties to arbitrate a given controversy, is a judicial task." Crufon Const. v. Autoridad Edificios Públicos, 156 D.P.R. 197, 202 (2002), citing World Films, Inc. v. Paramount Pict. Corp., 125 D.P.R. 352, 361 (1990) and Mun. de Ponce v. Gobernador, 136 D.P.R. 776-783 (1994).

---

[5] Article 3 of the PRCAA states that: "If any of the parties to a written arbitration agreement institutes action or other legal remedy, the court before which said action or remedy is pending shall, after being satisfied that any dispute involved in said action or remedy may be submitted to arbitration under said agreement, and on motion of any of the parties to the arbitration agreement, order said action or remedy stayed, until such time as the arbitration has been proceeded with, according to the agreement." P.R. Laws Ann., tit. 32, § 3203.

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

### C. The dispute resolution clauses.

Defendants seek to compel arbitration of plaintiffs' claims relying on the dispute resolution clauses contained in Deed No. 2 and Deed No. 130.[6] The court will first address the applicability of the dispute resolution clause contained in Deed No. 2 inasmuch said clause may be determinative as to whether all of plaintiffs' claims must be submitted to arbitration.

Defendants contend that the language of the resolution clauses in Deed No. 2 is mandatory, that plaintiffs are "contractually bound to arbitrate any claim[s] against [defendants] and are precluded from bringing said claim[s] before a court of justice", and therefore, that plaintiffs do not "have the option of refusing to arbitrate their claim[s]." Docket No. 22, at 5; see also Docket No. 36, at 3. Plaintiffs, on the other hand, contend that the language of the clauses is permissive and that they "may pursue any lawful means to resolve their claim against [d]efendants", including filing the present lawsuit. Docket No. 32, at 4.

A fair and reasonable reading of the pertinent clause in Deed No. 2 suggests that the parties bound by Deed No. 2 agreed to submit all "Claims", as defined therein, to alternative dispute resolution methods such as mediation or arbitration, with the exception of those "Claims" that fall under any of the three specific situations listed in the second paragraph of said clause. To interpret the dispute resolution clause in Deed No. 2 as allowing any bound party the choice of whether to submit all "Claims" to arbitration, mediation or any other alternative dispute resolution method, or

---

[6] The Melnyks, and PDMARB in particular, allege that even if Deed No. 2 does not compel plaintiffs to arbitrate their claims, the dispute resolution clause in Deed No. 130 would still require arbitration of said claims, insofar said clause specifically deals with disputes concerning party walls. See Docket No. 36, at 12-13, ¶¶ 2-3.

14

<u>Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,</u>
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

to proceed directly to litigate said "Claims" in court without first exhausting such alternative dispute resolution mechanisms would render the clause superfluous and without any practical effect. If the parties bound by Deed No. 2 were able to decide whether to arbitrate or mediate their "Claims" or not, then there would have been no need for the dispute resolution clause in the first place. The dispute resolution clause, by using in its first paragraph the words "shall attempt", is mandatory in nature and requires the bound parties to submit their "Claims" to alternative dispute resolution mechanisms, except for the three type of "Claims" that are specified in the second paragraph of the clause, "where there shall be no obligation to do so."

The question then, becomes, whether plaintiffs' claims fall under any of the three exceptions established in the second paragraph of the dispute resolution clause contained in Deed No. 2. Said exceptions are the following:

(a) any suit by the Association against any Bound Party to enforce the provisions of Article V; or

(b) any suit by the Association to obtain a temporary restraining order (or equivalent emergency equitable relief) and such other ancillary relief as the court may deem necessary in order to maintain the status quo and preserve the Association's ability to enforce the provisions of Article VII and Article IX; or

(c) any suit between Owners (other than the Developer) seeking redress on the basis of a Claim which would constitute a cause of action under the laws of the Commonwealth of Puerto Rico in the absence of a claim based on the Declaration, Bylaws, Articles or rules of the Association, if the amount in controversy exceeds $5,000.

Docket No. 22, Exhibit 1 (Deed No. 2, Part XIII (General Provisions), § K); <u>see also</u> Docket No. 32,

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

Exhibit 1.[7]

In the case at bar, it is clear that the first two exceptions do not apply inasmuch as PDMHA is not a plaintiff in this case and therefore the present case is not a "suit by the Association" for purposes of subsections (a) and (b) of the second paragraph of the dispute resolution clause in Deed No. 2.

As to subsection (c), it is clear from its language that the same only applies if the following three elements are present:

(1) the claims are actionable under Puerto Rico law;

(2) the claims are not based on, related to or do not stem from Deed No. 2 or PDMHA's bylaws or rules; and

(3) the claims exceed the amount of five thousand dollars.

Plaintiffs describe this action as "an action for declaratory judgment, seeking relief and money damages against defendants ... for their unreasonable, unlawful and bad faith actions which undoubtedly constitute a clear breach of their obligations under [Deed No. 2] and the 'Palmas del Mar Architectural Review Board Design Codes.'" Docket No. 1, ¶ 1. Thus, plaintiffs announce in the very first paragraph of the complaint that their claims relate to and stem from defendants' alleged interpretation, application or enforcement of several provisions contained in Deed No. 2.

---

[7] Article V of Deed No. 2 is titled "Covenants for Maintenance Assessments". Article VII is titled "Architectural Standards" and provides for the creation of the PDMARB as an agent appointed by PDMHA with authority to perform all architectural review functions related to the properties located at Palmas del Mar complex. Article IX is titled "Use of Property" and, as suggested by its title, contains regulations regarding the use of said properties. Docket No. 22, Exhibit 1 (Deed No. 2, Part XIII (General Provisions), § K); see also Docket No. 32, Exhibit 1.

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

The complaint asserts several causes of action under Puerto Rico law, namely, declaratory judgment and request for injunction, breach of contract, negligence, bad faith ("dolo") and tort.[8] Insofar these claims are actionable under Puerto Rico law, plaintiffs' claims meet the first element required for subsection (c) of the second paragraph of the dispute resolution clause in Deed No. 2 to apply. Furthermore, plaintiffs also satisfy the third element of subsection (c) inasmuch the complaint requests compensation in an amount of not less than ten million dollars. See Docket No. 3, ¶¶ 43, 46, 49 and 53. Plaintiffs, however, fail to meet the second element required by subsection (c). As plaintiffs themselves allege and acknowledge throughout the complaint, their claims relate to or stem from defendants' alleged interpretation, application or enforcement of the provisions contained in Deed No. 2 regarding the approval by PDMARB of the construction design plans submitted by plaintiffs.[9] Therefore, plaintiffs' claims do not fall under any of the exceptions listed

---

[8] The cause of action for declaratory judgment and request for injunction is brought pursuant to Rules 59 and 65(a) of the Puerto Rico Rules of Civil Procedure, P.R. Laws Ann., tit. 32, App. III R. 59 and 65(e), as well as Fed. R. Civ. Proc. R. 57, 28 U.S.C. § 2001. See Docket No. 3, ¶ 40.

[9] In the opposition to the Melnyks' request to compel arbitration, plaintiffs argue that the dispute resolution clause in Deed No. 2 does not preclude them from litigation their tort claims brought pursuant to article 1802 of the Puerto Rico Civil Code, because said claims "go beyond the issue of party walls." Docket No. 41, at 4 ("In any event, the above described arbitration dispositions do not preclude this suit brought pursuant to Article 1802 of the Puerto Rico Civil Code, as the claims of this action go beyond the issue of party walls."). In the complaint, plaintiffs allege several times that PDMARB's, PDMHA's, the Lopez's and the Melnyks' negligent actions or omissions in interpreting, applying or enforcing Deed No. 2 and their failure to comply with their duties thereunder constitute the basis of the tort claims under article 1802. Docket No. 3, ¶¶ 45-46, 48-49, 51-53. The damages that plaintiffs claim to have suffered as a result of these actions and omissions include the inability to use and peacefully enjoy their property, a decrease in the value of the same, emotional and mental distress, as well as a "deteriorated health condition as evidenced by a recent stroke caused by the [PDMARB's] failure to perform its duties." Id. Inasmuch plaintiffs are essentially claiming that the damages allegedly suffered by them arise from or are related to defendants' interpretation, application and/or enforcement (or lack thereof) of Deed No. 2, said claims also fall within the very broad definition of "Claims" contained in the first paragraph of the dispute resolution clause. Furthermore, plaintiffs can not litigate their tort claims until the "issue of the party walls" is first ventilated through arbitration. Allowing plaintiffs to litigate said claims at this juncture

17

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

in the second paragraph of the dispute resolution clause in Deed No. 2. Plaintiffs' claims must be submitted to arbitration, mediation or any other alternative dispute resolution mechanisms consistent with said clause.

Finally, the court must consider plaintiffs' argument that the dispute resolution clause in Deed No. 2 does not apply to PDMARB because said entity is not a "Bound Party" for purposes of the clause. In particular, plaintiffs allege that the dispute resolution clause contained in Deed No. 2 does not apply to PDMARB because PDMARB "is an entity different from the PDMHA" and that PDMARB "merely acts as an agent appointed by the PDMHA to perform the duties contained in Article VII" of Deed No. 2. Thus, plaintiffs contend that PDMARB does not qualify as a "Bound Party" that is subject to the dispositions of the dispute resolution clause. See Docket No. 32, at 4-5. PDMARB argues that the disputes resolution clause includes "all Persons subject to [Deed No. 2]" in its definition of "Bound Parties" and that although PDMARB is an entity apart from PDMHA, "it is nonetheless a '[B]ound [P]arty ... precisely because it was specifically created pursuant to, and performs its duties and functions of architectural review under, and in strict compliance with, the dispositions of Articles VI and VII of [Deed No. 2]." See Docket No. 37, at 2-3.

Deed No. 2 defines as a "Bound Party" any person subject to said deed. Thus, the question becomes whether PDMARB is subject to Deed No. 2. The answer to this question is in the affirmative. PDMARB was created as an agent of PDMHA pursuant to Article VII of Deed No. 2, which states that:

---

of the proceedings would not promote an efficient use of judicial resources.

> [PDMHA] shall have the right, but not the obligation, to appoint an agent to perform the duties contained in this Article. The agent may be the Palmas del Mar Architectural Review Board, Inc., its successors or assignee, or any other agent [PDMHA] deems proper to perform the architectural review functions. Reference to the Architectural Review Board ("ARB") in this Article shall include, if applicable, any agent appointed by [PDMHA] to perform the duties of the ARB.

Docket No. 22, Exhibit 1 (Deed No. 2, Part VII (Architectural Standards); see also Docket No. 32, Exhibit 1). Article VII assigns the PDMARB broad authority and jurisdiction to perform the following functions, among others, to: (1) "review and approve all original construction on any portion of the Properties"; (2) "prepare and promulgate design and development guidelines and application and review procedures"; (3) "authorize variances from compliance with any of its guidelines and procedures" under certain specific circumstances; and (4) seek enforcement of any decision of the PDMARB in the courts of competent jurisdiction, as well as any other remedy, at law or in equity, including without limitation specific performance and injunctive relief. Thus, because PDMARB is subject to Deed No. 2 inasmuch it was created pursuant to said deed to perform the duties specified therein, PDMARB also falls under the definition of "Bound Party" and is covered by the dispute resolution clause.

Furthermore, where a principal is bound to arbitration and the complaint arises out of the agent's conduct on behalf of that principal, the agent is bound by the principal's agreement to arbitrate disputes. See e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121 (3d Cir.1993) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements."); Roby v. Corporation of Lloyd's, 996 F.2d. 1353, 1360 (2nd Cir. 1993) ("Courts in this and other circuits

19

Earl A. Garrison, et al, v. Palmas del Mar Homeowners Assoc., Inc., et al,
Civil No. 06-2062 (GAG/MEL)
Opinion and Order

have consistently held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); Davidson v. Becker, 256 F.Supp.2d 377, 384 (D.Md. 2003) (agent of corporation providing dental services could compel former employee to arbitrate racial discrimination claims against corporation, even though agent was not signatory to agreement containing arbitration provision). Thus, PDMARB is also covered by and can invoke the protection of the dispute resolution clause in Deed No. 2.[10]

**III. Conclusion**

In view of the foregoing, the requests to compel arbitration (Docket Nos. 22 and 35) are hereby GRANTED.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 10th day of March, 2008.

                                                  s/Marcos E. López
                                                  UNITED STATES MAGISTRATE JUDGE

---

[10] Having reached the conclusion that the dispute resolution clause in Deed No. 2 mandates arbitration of all of plaintiffs' claims, it is unnecessary to entertain an analysis as to whether the dispute resolution clause in Deed No. 130 also requires arbitration of said claims.

20